## LESTER D. STEVENS V. STATE.

No. 25,855. June 18, 1952.

Hon. E. A. Bills, Judge Presiding.

No attorney for appellant of record on appeal.

*George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, death.

The deceased, an 85-year old recluse, lived alone in a one room shack in the village of Progress in Bailey County. It was a matter of common conjecture in the community that deceased had money buried in or about his home. Appellant's co-indictee was shown to have been present when this supposition was alluded to on one occasion.

Deceased was last seen alive at dusk on Saturday, August 11, 1951. On Sunday, his absence was noted by his neighbors, who observed that a screen had been torn from a window in deceased's home and who then notified the officers. An intensive search was instituted by the officers and the residents of the community, who had a great deal of affection for the deceased. His body was finally found on the next Wednesday afternoon in a cotton field.

The doctor who performed the autopsy on the body of deceased testified that death had resulted from blows on his head which rendered deceased unconscious; that, in his judgment, deceased had continued to live but was unable to raise himself from the ground; and that the dehydration resulting from the severe August sun had brought about his death sometime during Sunday.

One King, a resident of Amarillo, testified that, while a boarder at the home of appellant's wife, and after reading the newspaper accounts of the homicide in question, his suspicions became aroused by appellant's conduct and words spoken by appellant's wife to appellant; and he reported his suspicions to the police.

Officer Howard, of the Amarillo police, testified that, pursuant to the information which he received from King, he arrested appellant and his co-indictee Livesay on October 2, 1951.

Sheriff Gaither, of Potter County, testified that he interrogated appellant for an hour, or an hour and a half, on October 3, 1951, during which time appellant denied any connection with the crime. At the end of such interrogation, the sheriff related that he brought Livesay in the room, and Livesay said, "Leo, you might as well come clean, I have told him everything," whereupon appellant said, "All right, I will tell you about it."

Appellant's confession, introduced in evidence, told in detail how he and Livesay had left Amarillo on Saturday, August 11, 1951, to go to Progress for the purpose of robbing an old man whom Livesay had told him about; how they induced the deceased to go with them in Livesay's automobile on the pretense of buying some lots; how they had driven out in the country, where Livesay hit deceased over the head with a "pop" bottle and a gun; how they had stopped the automobile and carried the deceased out in a cotton field, forced him to drink some "pop" containing barbituates and left him lying in the field. The confession continues to relate how appellant and Livesay returned to deceased's home, near which they buried his purse; how Livesay had entered the house through a window while appellant acted as a lookout; and how they returned to Amarillo, stopping en route to wipe away blood stains from the upholstery of the automobile.

The confession is silent on whether the search of deceased's house was fruitful. Only by implication from the record are we able to deduce that Livesay did find some money buried in the dirt floor.

The very careful district attorney who prosecuted this case, aided by the conscientious work of the investigating officers, corroborated this confession as to the finding of deceased's

purse, the blood stains on Livesay's car, and in many other important respects.

On October 4, 1951, appellant, after having been brought to Bailey County, made a second written confession before the county judge of said county, in which he re-affirmed that the confession made in Amarillo the day before had been voluntarily made.

Again, before the Bailey County Grand Jury which indicted him, appellant made still another written confession, in which he told in more detail about the murder to which he had originally confessed. No objection was urged to the introduction of the confession.

The court-appointed attorneys performed the service assigned to them.

In view of the maximum penalty assessed, the members of this Court have carefully studied the record and find the evidence sufficient to support the verdict.

The judgment is affirmed.